IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM CRAIG BUCHANAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  05-W-170-N |
| ) | |
| STATE OF ALABAMA ) | |
| DEPARTMENT OF PUBLIC HEALTH, ) | |
| ) | |
| Defendant, ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; the Age Discrimination in Employment Act, 29 U.S.C. § 621; the Fourteenth Amendment to the United States Constitution as implemented by 42 U.S.C. § 1983; and the Alabama Age Discrimination in Employment Act, *Ala. Code* § 25-1-22.  The case is now before this court on the defendant's motion for summary judgment (doc. #18, filed July 17, 2006).  Upon consideration of the motion, and for the following reasons, the court concludes that all claims except the Title VII claim are due to be DISMISSED for lack of jurisdiction, and that the defendant's motion is due to be GRANTED with respect to the remaining claim.

**I. BACKGROUND**

The following facts have been established by uncontroverted pleading or testimony:

The plaintiff has been employed by the Alabama Department of Health ("the Department") as an auditor since 1994 (compl. ¶ 10; pl. ex. E; def. ex. O).  Defendant Donald

1

Williamson ("Williamson") is State Health Officer and head of the Department (compl. ¶ 7); defendant Debra Thrash ("Thrash") is Director of the Office of Program Integrity ("OPI"), which controls audits within the Department and which employed the defendant (compl. ¶ 8).

Accountants and auditors within the Department are assigned "bases," and Department policy requires that an employee's base be where he works, or the place "from where the work emanates" (def. ex. A, p. 175-77; def. ex. N).[1] Since 1989, the State of Alabama has provided a five percent "pay differential" in all departments to auditors and accountants "who are in assignments requiring travel fifty percent or more of the time," but the extra pay has to be reviewed monthly and supported by actual travel (def. ex. P, Q).[2] "Travel status" is determined by travel from an auditor's base to the work, not from the employee's home to the base, so that an auditor performing an audit in his base county is not on travel status (pl. ex. A, p 36; pl. ex. C, p. 50-51).

On an unspecified date, Williamson asked Thrash to prepare a budget for OPI for fiscal year 2004, and said the budget must reduce staff by three positions (def. ex. A, p. 168). Thrash identified three positions to be removed: an auditor's position held by the plaintiff

---

[1] Defense exhibit N is a 1994 memorandum from Williamson announcing this policy.

[2] Before the events giving rise to this litigation, the plaintiff lost the pay differential in February 2002, regained it in March 2002, lost it in June 2002, regained it in August 2002, lost it in September 2002, regained it in November 2002, lost it in December 2003, and regained it in January 2004 (def. ex. F, p. 34-40; def. ex. R). According to a memo from the State of Alabama's Personnel Department, the differential is designed to "compensat[e] employees who are involved in substantial travel" (def. ex. P).

based in Houston County, an auditor's position held by Leslie Smith ("Smith") based in Monroe County, and an accountant's position held by Ruthie Bonds ("Bonds") in the Department's central office in Montgomery (*id.*, p. 169). In October 2003, unspecified persons told Thrash that only two positions, rather than three, would be eliminated, and asked her which position she preferred to keep. Thrash responded that she wanted to keep the Montgomery position, but that she wanted the plaintiff rather than Bonds to hold the position due to his greater experience (*id.*, p. 173).[3,4]

On November 1, 2003, the Department transferred Smith and Bonds out of OPI and into other offices (def. ex. A, p. 170; def. ex. I, J). Both received positions in Montgomery, and both lost their travel differentials (def. ex. A, p. 180; def. ex. G, p. 33, 35-36; def. ex. I, J). On March 6, 2004, OPI transferred the plaintiff to the Montgomery base (compl. ¶ 13). He also lost his travel differential (def. ex. F, p. 40-41; def. ex. R).[5] The plaintiff's duties usually kept him working in Montgomery but, when he performed audits outside of Montgomery that placed him in travel status, he received the travel differential (def. ex. F,

---

[3] Thrash testified that she told the plaintiff she would keep him at the Houston County base as long as she could because of upcoming audits in the area, but that she would probably have to move him to the central office after February 2004 (*id.*, p. 174-75; *see also* def. ex. L). However, the plaintiff testified that Thrash did not inform him of his upcoming transfer until later (def. ex. F, p. 25-26). The plaintiff first complained about the upcoming transfer on February 19, 2004 (pl. ex. A-22).

[4] According to the plaintiff's testimony, the Montgomery position required the same kind of work as the Houston County position: performing audits (pl. ex. A, p. 110-11). However, the audits in Montgomery were more often at the state than the county level, and therefore usually occurred in Montgomery County.

[5] The plaintiff testified that he took a month of medical leave for cataract surgery shortly after his transfer (pl ex A, p. 56; compl. ¶ 16), but the record does not show the effects of this leave on his travel differential.

p. 40-44; def. ex. R).[6]

In the meantime, a senior accountant, the deputy director of OPI, announced her retirement in February 2004 (def. ex. A, p. 195-96). On February 27, 2004, Thrash met with Williamson and discussed the matter. Thrash proposed recreating Smith's old Monroe County position to assist with the extra workload left by the retirement, and suggested transferring Smith back to OPI to fill that position (def ex A, p. 195-96; def. ex. T; pl. ex. J). On March 20, 2004, Williamson approved the transfer (def. ex. T).

On April 5, 2004, the Department transferred Smith back to OPI (def. ex. A, p. 171).[7] Smith regained her prior base in Monroe County and regained her travel differential (def. ex. A, p. 180). Her position covered southwest Alabama, but sometimes the Department required her to do audits in the southeast region where the plaintiff had previously performed his audits. (def. ex. G, p. 24-25, 42; def. ex. D).[8,9]

---

[6] Specifically, the plaintiff lost his travel differential on March 6, 2004 (at the time of his transfer; the record is silent as to whether he received it while he was on medical leave), regained it on January 8, 2005, and lost it on April 30, 2005 (def. ex. F, p. 40-44; def. ex. R).

[7] A policy created by Williamson in 2002 required that, for lateral transfers within the Department, job openings be "posted" for five days so that qualified persons within the Department would have a chance to apply for them (pl. ex. B, p. 203-04; def. ex. S). This policy also provided for exceptions in the best interests of the Department, which had to be requested in writing (pl. ex. B, p. 204; def. ex. S.). Thrash requested such an exception for Smith on March 18, 2004. Williamson approved it on March 20, 2004 (pl. ex. B, p. 203-04; def. ex. T).

[8] In 2003, when Thrash first eliminated Smith's position and the plaintiff's, she also reduced the number of "audit districts" to reflect the decreased personnel. In 2004, the southwestern district where Smith had worked received an extra county from the old southeastern district where the plaintiff had worked. The latter received eleven counties from another district to its north (def ex C, D; def. ex. G, p. 24-25).

[9] The plaintiff also sometimes performed audits outside his district (pl. ex. A, p. 53).

The plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) stating that Leslie Smith had been transferred into his former position, and that the Department had discriminated against him by transferring him to Montgomery and replacing him with Smith (pl. ex. N). The EEOC denied relief (pl. ex. O). This action ensued. The plaintiff demands relief against the Department for sex discrimination in violation of Title VII of the Civil Rights Act of 1964 (count 1), and against Thrash and Williamson in their official capacities for age discrimination in violation of the Age Discrimination in Employment Act (ADEA) (count 2) and of the Fourteenth Amendment to the United States Constitution (count 3). The introduction to the plaintiff's complaint and its jurisdictional section also suggest that the plaintiff seeks relief under the Alabama Age Discrimination in Employment Act, although the complaint does not contain a separate count for this claim.

In October 2005, following a budget increase, OPI hired two more accountants and transferred the plaintiff back to his Houston County base (pl. ex. B, p. 211-12; def. ex. U).

## II. JURISDICTION

The plaintiff has brought actions pursuant to federal statutes, specifically 42 U.S.C. § 2000e-2, 29 U.S.C. § 621, and 42 U.S.C. § 1983. This court has subject matter jurisdiction over these claims under 28 U.S.C. § 1331.

However, the defendants have raised the issue of jurisdictional immunity under the Supreme Court's Eleventh Amendment case law, which provides that a state may not be sued in Federal court without its consent. *Alden v. Maine*, 527 U.S. 706, 716-17 (1999); *Hans v. Louisiana*, 134 U.S. 1, 11-21 (1890). Courts have recognized three exceptions to Eleventh

Amendment immunity: (1) where a state has expressly waived its immunity; (2) where Congress has validly abrogated the immunity pursuant to section five of the fourteenth amendment; and (3) where prospective injunctive relief is sought in a suit challenging the constitutionality of a state official's action. *Carr v. City of Florence*, 916 F.2d 1521, 1524 n. 2, 1524-25 (11th Cir. 1990) (citing *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238 (1985) and *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 102 (1984)).

With respect to the Title VII claim against the Department, Congress validly abrogated the state's sovereign immunity. *In Re Employment Discrimination Against the State of Alabama*, 198 F.3d 1305, 1308 (11th Cir. 1999). Thus, this claim will not be dismissed on this ground. With respect to the ADEA claims, Congress did not validly abrogate the state's sovereign immunity, *Kimel v. Florida Board of Regents*, 528 U.S. 62, 91 (2000), and the state has not consented to suit. Accordingly, this claim is due to be dismissed. With respect to the Fourteenth Amendment § 1983 claim, the court may only hear such a claim against state officials in their official capacities if the suit seeks prospective injunctive relief. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 & n.10 (1989); *Miller v. King*, 384 F.3d 1248, 1260 (11th Cir. 2004), *vacated on other grounds*, 449 F.3d 1149 (11th Cir. 2006). The only prospective injunctive relief that sought by the plaintiff at the time that he filed his complaint was the return of the plaintiff to his prior base in Houston County. This has now occurred, and the issue is moot. Accordingly, the court will dismiss counts two and three of the plaintiff's complaint.

With respect to the plaintiff's claim under Alabama law, Article I, section 14 of the Alabama Constitution forbids lawsuits against the State of Alabama. As interpreted by Alabama courts, this provision sweeps broadly and cannot be abrogated by any branch of the state government. In the courts of Alabama, it is a jurisdictional bar. *Larkins v. Department of Health and Mental Retardation*, 806 So. 2d 358, 363-64 (Ala. 2001). This section applies to any action against a department or official of the state that would require disbursements from the state treasury, as would all the relief sought here. *Alabama Agricultural & Mechanical University v. Jones*, 895 So. 2d 867, 873 (Ala. 2004); *Moody v. University of Alabama*, 405 So. 2d 714, 717 (Ala. Civ. App. 1981). The Alabama legislature, unlike Congress, cannot validly abrogate the state's sovereign immunity to suit in federal court. The State of Alabama has not consented, and by its constitution cannot consent, to suit under this statute. Accordingly, the court will dismiss the plaintiff's implied claim under *Ala. Code* § 25-1-22 for lack of jurisdiction.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his claim. The burden then shifts to the nonmovant to make a showing

sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993). To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P.* 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie National Life Insurance Co.,* 809 F.2d 1559 (11th Cir. 1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *see also DeLong Equipment Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion International Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990); *see also Matsushita Electrical Industries Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transport Co. v. M/V Nan Fung,* 695 F. 2d 1294, 1296 (11th Cir. 1983).

When, as here, the plaintiff brings a claim of employment discrimination based on

circumstantial evidence, the courts of the Eleventh Circuit use the summary judgment standard articulated in *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000), (citing *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981).  Under that standard, the plaintiff has the initial burden of establishing a prima facie case of discrimination.  To establish a prima facie case, he must show that (1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment effect, and (4) he suffered from differential treatment because of membership in the protected class.  *Kelliher v. Veneman*, 313 F.2d 1270, 1275 (11th Cir. 2000).

A plaintiff who does this creates a presumption (for summary judgment purposes) that the employer unlawfully discriminated against the employee.  If the employer articulates a legitimate, nondiscriminatory reason for the challenged action, then the presumption of discrimination is eliminated.  The plaintiff then has the opportunity to bring evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were pretextual.  If the plaintiff does not provide such evidence, then the defendant is due summary judgment.  If the employer articulates more than one legitimate reason, the plaintiff must bring evidence of pretext for *each* reason.  *Chapman*, 229 F.3d at 1024-25; *see also Combs v. Plantation Patterns*, 106 F.3d 1519, 1539, 1543 (11th Cir. 1997).

## IV. DISCUSSION

### A. Prima Facie Case

In his complaint, the plaintiff alleges one act of discrimination: his transfer to

Montgomery on March 6, 2004 (compl. ¶ 13).[10]  The adverse effects he alleges are as follows: having to commute five hours per day (compl. ¶ 14) and losing his eligibility for a travel differential (compl. ¶ 15).  The plaintiff claims that he was treated differently from Leslie Smith because he was transferred to a Montgomery position, where he had a long commute with no travel differential.

The long commute was not an adverse employment effect,[11] and was not significantly worse than Smith's commute.[12]  The loss of travel differential may have been an adverse employment effect.[13]  Assuming *arguendo* that it was, and that the plaintiff has established

---

[10] In his brief, the plaintiff alleges other acts of discrimination – for example that Thrash was inflexible with respect to his work hours but not other employees' (doc. #25, p. 8).  However, these additional acts were not mentioned in the plaintiff's complaint to the EEOC, which he filed six months after his transfer to Montgomery (pl. ex. N), are not similar to the one act of discrimination he did allege (the transfer itself), and did not arise naturally from it.  Accordingly, the plaintiff cannot bring these claims in this court. *Eastwood v. Victor Temporaries*, 441 F. Supp. 51 (N.D. Ga. 1977), *citing Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 161-62 (5th Cir. 1971); *see also Alexander v. Fulton County*, 207 F.3d 1303, 1333 (11th Cir. 2000). Furthermore, these acts are neither mentioned nor suggested in the complaint.  The plaintiff cannot amend his complaint by means of a summary judgment response.  *See Harrison v. Principi*, 2005 WL 4074516 at *7 & n.9 (D.S.C. 2005) (refusing to consider adverse actions asserted in a brief on summary judgment, but not in the complaint); *see also Mariano v. Potter*, 2006 WL 907772 (S.D. Ala. 2006) at *15.   Thus, these acts will not be considered.

[11] *Evans v. Alabama Department of Corrections*, 418 F. Supp. 2d 1271, 1276 (M.D. Ala. 2005); *see also Williams v. Bristol-Meyers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996); *Smith v. Alabama Department of Public Safety*, 64 F. Supp. 2d 1215, 1222 (M.D. Ala. 1999).

[12] The plaintiff's hometown of Dothan, Alabama, and Smith's hometown of Enterprise, Alabama, are similar distances from Montgomery (80-100 miles) and, according to the complaint, Smith had to drive 100 miles to her base county even after the Department transferred her back.

[13] The Department transferred Smith to Montgomery four months *before* transferring the plaintiff there, and removed her travel differential for five months (pl. ex. B, p. 180; def. ex. J).  The plaintiff is claiming discrimination because the Department did the same thing to him, then transferred Smith back to her old base.  The Department consistently applied State policy on travel differentials; Smith and the plaintiff both received the differential when they were in travel status and did not receive it when they were not.  However, in the 21 months between the first change (Smith's transfer to Montgomery) and the last (the plaintiff's transfer back to Houston County), Smith was in travel status for 15 months while the

a prima facie case, the Department is due summary judgment because it has articulated sufficient reasons for its actions and the plaintiff has not presented sufficient evidence that these reasons are pretextual.

**B.  The Defendant's Reasons and the Plaintiff's Responses**

The defense has articulated the following reasons for its decision to transfer the plaintiff: that the plaintiff, who was more experienced than Smith or Bonds, was the best qualified to perform state-level audits within OPI; and that the department would not benefit financially from basing him in Houston County while having him perform audits in Montgomery.  The court concludes that these are legitimate business reasons that are supported by the testimony of Thrash.

The plaintiff does not challenge these assertions directly, but instead argues that (1) Thrash's reason for moving the plaintiff to Montgomery "was in direct conflict" with her reason for requesting that Smith's former position be recreated; (2) Thrash had discretion to base the plaintiff in Houston County, but "prospectively" changed the plaintiff's base to Montgomery instead of waiting to see how his work assignments "developed"; (3) Thrash requested a waiver of the lateral transfer policy for Smith but did not request a waiver of the basing policy for the plaintiff; (4) Thrash let other accountants in Montgomery work more

---

plaintiff was in travel status for 8 months.  To decide the case, the court need not decide – and therefore will not decide – whether this difference is sufficient to create a prima facie case for discrimination.  The court nonetheless notes that, had the Department done as the plaintiff wished and kept him in Houston County while keeping Smith in Montgomery, the disparity would have been larger.  Smith would have spent only 4 months in travel status and, thus, would have had a stronger prima facie case for sex discrimination than the plaintiff does.

flexible schedules than the plaintiff; (5) Thrash let a female accountant named Melba Medders perform audits in two counties at once so that she could remain on travel status, but did not permit the plaintiff to do the same; (6) Thrash moved the plaintiff's base to Montgomery even though he complained that he could not afford to move there; and (7) in 2005, after recreating the plaintiff's Houston County position and moving the plaintiff there, the Department transferred two accountants from outside OPI to fill positions in Montgomery.

Reasons (4) and (5) are not attempts to show pretext with respect to the plaintiff's transfer, but are separate assertions of discrimination related to incidents after the transfer. The plaintiff did not report these acts in his EEOC complaint and did not timely add them to his complaint. As noted above (*supra* n. 10), he cannot assert them now. The court will consider the remaining reasons in turn.

**C.  Analysis of the Plaintiff's Responses**

1.  Reasons for the Personnel Actions

> The plaintiff argues that
>
> [i]n her letter to the plaintiff, Thrash claimed that the reasons she changed the plaintiff's based [sic] from Houston County to Montgomery were that "his territory would expand and would also include audits in the central office" and that the "relatively clean status of the counties in [southeast Alabama] meant she "would not be able to keep [the plaintiff's position] based in Houston County" [def. ex. L]. However, less than three weeks later, Thrash wrote to Dr. Williams that she was requesting funding for an accountant position to "assist with audits in southeast Alabama where the Director is currently having to assist" [pl. ex. J]. The rationales for these two personnel moves are in direct conflict.

12

(doc. #25, p. 16). This argument is without merit. Thrash correctly informed the plaintiff that his new position would require *most* of his audits to be in Montgomery, and the evidence shows that this was so (which is why the plaintiff was in travel status less often than before). Her description of the southeast counties as "relatively clean" did not mean that they would never need audits; indeed, Thrash testified that the counties "could stand to be audited on a *less frequent* basis" (pl. ex. A, p. 181). Thrash did not change the plaintiff's travel status before he completed his last audit in southeast Alabama.

Furthermore, the plaintiff glosses over a distinction between two uses of "southeast Alabama," one of which is Thrash's and one of which is his own. Thrash's letter to the plaintiff refers to "Audit District 10," a ten-county region in southeast Alabama. But the southeastern audit district more than doubled in size when Thrash cut two positions from OPI staff, so that "southeastern Alabama" in her letter to Dr. Williamson apparently refers to a much larger area than does "Audit District 10" in her letter to the plaintiff. This is significant because the plaintiff's implicit argument that his old district was not "relatively clean" fails if the "southeast Alabama" audits referred to in the letter were not the "clean" ones in his old district. In any case, the plaintiff's implications are not sufficient to defeat summary judgment; to do this, he must set forth *specific* facts showing an issue for trial. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000), *citing Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978). A vague hint of pretext is insufficient.

2. Prospective Change

The plaintiff argues that State policy gave Thrash "a great deal of discretion" in

13

determining the plaintiff's base, and that she wrongly and prematurely changed his base to Montgomery "without waiting to see how [the plaintiff's work] assignments developed" (doc. #25, p. 16-17).

Undisputed evidence shows that the Department's basing policy *required* Thrash to base an employee "where he/she physically works the most" (def. ex. N). Undisputed evidence also shows that Thrash knew in advance which counties were set to be audited, that she knew most of the plaintiff's audits would be in Montgomery County, and that most of the plaintiff's audits were, in fact, in Montgomery County (which is why he lost the travel differential). Further, undisputed evidence shows that Thrash kept the plaintiff based in Houston County to work on two audits in his old district before switching his base to Montgomery (pl. ex. B, p. 189-90), and that he did not regain his travel differential (for an audit outside of Montgomery) until January 2005. The record is devoid of evidence that Thrash could lawfully have based the plaintiff outside of Montgomery County when most of his audits took place in that county. In addition, the record is devoid of evidence that Thrash changed the plaintiff's base to Montgomery before he started doing audits there,[14] or that she had reason to expect the March 2004 audit schedule would change after March 6, 2004. This argument does not show pretext.

3. Request for Waiver

---

[14] Thrash testified that, after the plaintiff finished his last audit in Geneva County (in his old district), she immediately assigned him to a state-level audit in Montgomery (pl. ex. B, p. 195). She also testified that county-level audits typically took a month apiece (pl. ex. B, p. 157-58). The plaintiff has offered no evidence to support his implicit claim that Thrash did not know where the plaintiff would be auditing in March, but maliciously changed his base to Montgomery before gaining such knowledge.

14

The plaintiff argues that Thrash requested a waiver of the Department's lateral transfer policy for Smith (to recreate her old position and transfer her back into it without posting the job), but did not request a waiver of the Department's basing policy for the plaintiff (to give him a base of Houston County, and preserve his travel differential, when most of his work was in Montgomery).

The two policies are not comparable. The lateral transfer policy specifically provides for exceptions, requiring only that the person requesting the exception furnish Williamson with a memo explaining the reasons. Thrash made the waiver request for Smith in the prescribed way. The basing policy, by contrast, allows no exceptions by any mechanism. It specifically provides that "[t]he location of an employee's base should not be used as an incentive for employment. An employee should be compensated adequately through salary...." On its face, this policy required Thrash to base the plaintiff in Montgomery because his work was in Montgomery, and enjoined her *not* to assign him a different base in order to increase his remuneration. Thrash's failure to request an exception to this policy (which did not provide for exceptions) was not a discriminatory act; and the fact that she requested an exception to a different policy (which did provide for such exceptions) for Smith is not evidence of pretext.

4. Non-Response to Complaints

In February, the plaintiff complained to Williamson about his upcoming transfer, saying that he could not afford to move to Montgomery. Williamson so informed Thrash, who nonetheless proceeded with the transfer. The plaintiff argues that this is evidence of

15

pretext (doc. #25, p. 19).   However, it is well established that Title VII does not protect a plaintiff against every decision he dislikes, nor does it require an employer to forego every decision that raises complaints.   Such decisions are not, by themselves, evidence of discrimination.  *Snellgrove v. Teledyne Abbeville*, 117 F. Supp. 2d 1218, 1243 (M.D. Ala. 1999); *Lawrence v. Wal-Mart Stores, Inc.*, 236 F. Supp. 2d 1314, 1330 (M.D. Fla. 2002). The defendant's proffered reasons for transferring the plaintiff – namely, that his experience was needed and that the transfer would work well for the budget – are not contradicted by the plaintiff, who has not established pretext here.

5.  Hiring of New Accountants

Thrash testified that the budget for fiscal year 2006 permitted her to add two accountants to OPI's staff so, therefore, she transferred the plaintiff back to his old district and  hired two new accountants (pl ex B, p. 211-12; def. ex. U).  The plaintiff argues that Thrash's reason for transferring him in March 2004 is pretextual because she did not move Leslie Smith or another experienced Office auditor to Montgomery when she transferred him back south.  This argument is not well taken.  The plaintiff has not produced any evidence regarding the experience or qualifications of the new accountants, or where they were assigned, or what their duties were.  Without such evidence, his implicit argument that the Montgomery position did not require his level of experience fails.[15]  Moreover, the plaintiff

---

[15] This is even clearer if both new accountants performed state-level audits in Montgomery, as they may have for aught that appears in the record. The fact that the plaintiff was replaced with *two* accountants hardly shows that his job was easy, or required little experience, when the plaintiff formerly did the work by himself.  To defeat summary judgment, the plaintiff must produce *specific* facts to show pretext. *Leigh v. Warner Bros.*, *Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (citing *Gossett v. Du-Ra-Kel*

16

compares October 2003, when OPI's staff was reduced but its workload was not (pl. ex. A, p. 195), with October 2005, when OPI had regained both of its lost auditor positions, and one more besides (pl. ex. A, p. 211-12). If, as it appears, the work was spread among more accountants due to a larger budget, the assignment of a senior accountant to Montgomery may not have been as urgent in 2005 as it was in 2003.[16] The plaintiff has not produced evidence to show that it was. This argument does not establish pretext. Because the plaintiff has not produced evidence to show that the Department's proffered reasons for his transfer were pretextual, the defendants are due summary judgment on the plaintiff's Title VII claim.

**D. Retaliation**

The plaintiff has submitted a partially negative performance evaluation and a reprimand from November 2005 (doc. # 25, ex. L, M). The plaintiff argues that the low evaluation constitutes actionable retaliation for filing this lawsuit. However, as the defendants correctly note, no claim of retaliation appears in the plaintiff's complaint. The deadline for amendments passed on January 6, 2006, and the plaintiff did not attempt to amend his complaint to include retaliation until August 21, 2006 (doc. #23). This court denied the motion as untimely (doc. #26, entered August 22, 2006). Therefore, this claim is not before the court and will not be considered.

---

*Corp.*, 569 F.2d 869, 872 (5th Cir. 1978)).

[16] As a matter of basic economics, the marginal worker who is discharged when a firm shrinks, or is hired when a firm grows, may not be as valuable or productive as the non-marginal worker who is retained as long as possible. Thrash's description of her actions fits this rational pattern, and the plaintiff has produced no contrary evidence that might show pretext.

## V. CONCLUSION

Accordingly, it is

ORDERED that counts 2 and 3 of the complaint, and the plaintiff's implicit claim under the Alabama Age Discrimination in Employment Act, be DISMISSED for want of jurisdiction. It is further

ORDERED that the defendants' motion for summary judgment on count 1 of the complaint be and hereby is GRANTED.

DONE, this 18th day of October, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE